SUTPHIN v. NEW YORK TIMES CO.

(Supreme Court, Appellate Division, Second Department.   May 6, 1910.)

LIBEL AND SLANDER (§ 112)—ACTIONS—SUFFICIENCY OF EVIDENCE.

In libel for damages for falsely publishing a newspaper article to the effect that plaintiff's father died poor when his sons had executed a large number of notes to him, which should have been paid, evidence *held* to sustain a conclusion that the article was published wantonly and without regard as to its truth or for plaintiff's rights and feelings.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 112.*]

Appeal from Trial Term, Queens County.

Action by Harry Sutphin against the New York Times Company. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals.   Affirmed.

See, also, 122 N. Y. Supp. 835.

Argued before HIRSCHBERG, P. J., and JENKS, BURR, RICH, and CARR, JJ.

Alfred A. Cook (I. Maurice Wormser, on the brief), for appellant. William Willett, Jr., for respondent.

RICH, J.   The only question presented is whether the evidence is sufficient to justify a verdict for more than nominal damages.   The learned trial court properly instructed the jury that, so far as actual damages were concerned, they could give only nominal damages; that there was no evidence in the case showing that the defendant had any knowledge of the plaintiff, or animosity against him, and therefore it could not have any personal ill will against him.   These instructions excluded from consideration any element which could form the basis for punitive damages other than that of the defendant having published the libel wantonly, recklessly, and with an utter disregard as to whether it was true or false, and this question, under the evidence as it stood, was properly submitted to the jury as a question of fact. Crane v. Bennett, 177 N. Y. 106, 69 N. E. 274, 101 Am. St. Rep. 722

Mr. John H. Sutphin, a former county clerk of Queens county and a prominent and well-known politician, died testate July 21, 1907. leaving a widow and two sons (of whom the plaintiff is one) surviving him.   By his will he devised all of his estate to his widow, and named her as sole executrix.   A reporter of the Brooklyn Eagle interviewed Mr. Halstead Frost, Jr., one of the attorneys representing the widow in proceedings to probate the will, as the result of which that paper published, on August 19, 1907, an article in which it was said:

"Halstead Frost, Jr., of the above named firm, when asked if Mr. Sutphin's estate was sufficient for the comfortable support of the widow, said: 'Yes, but she could be much better cared for and would have a comfortable fortune if we could collect all the unpaid notes we have in our possession, many of them for large amounts.' 'Were they given by men able to pay?' asked the Eagle reporter. 'Many of them were, and the men are of prominence in the community, also.   They may be outlawed according to the statutes, but the moral obligation still exists.' 'Will they be publicly filed as among the as-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sets of the deceased?' was asked. 'They may have to be filed and published,' replied Mr. Frost."

The following day, August 20th, a reporter of the defendant read the article in the Brooklyn Eagle. Without interviewing Mr. Frost or any other person, or making any investigation, and using the article as his basis and sole information, he prepared and forwarded from New Hyde Park a telegram to the defendant, purporting to set forth an interview with Mr. Frost, in which, among other things, he said:

"Halstead Frost, counsel of this place, who had charge of the will of the late John H. Sutphin, formerly County Clerk of Queens County, which was recently filed in the Surrogate's Office at Jamaica, leaving an estate of but $2,100 to his wife Carrie, said to-day that it was an outrage that such a small amount should be left the widow when according to numerous unpaid notes which he held in his possession there should be a considerable fortune. Mr. Frost said that a great many of these notes were given by *persons* now well up in financial circles in Manhattan and Queens Boroughs as well as political and that they should be paid."

By an error of the telegraph operator in transmitting the article, the letter "p" in "persons" (which I have underscored) was changed to "h," so that when the article reached defendant the word "persons" read "her sons." Without any investigation or inquiry of any kind, and without having the message repeated, the defendant published in its issue of August 21st, under the following displayed headlines: "Let Father Die Poor. Sutphin Left His Wife Only $2,100, Though Sons Owed Him a Fortune"—the following article:

"New Hyde Park, L. I., Aug. 20.—Halstead Frost, a lawyer of this place, who had charge of the will of the late John H. Sutphin, ex-County Clerk of Queens County, which was recently filed in the Surrogate's Office at Jamaica, leaving an estate of but $2,100 to his wife, said to-day that it was an outrage that such a small amount should be left to the widow when, according to numerous unpaid notes which he held in his possession, she should have had a considerable fortune. Mr. Frost said that a great many of these notes were given by her sons now living in Manhattan and Queens Boroughs. They are all in prosperous circumstances, the lawyer said. He admitted that many of the notes were outlawed, but he declared that that did not release the parties from the obligation of meeting them. 'When the will is published and filed we may announce the names of the makers of these notes,' said Mr. Frost."

The falsity of this article was discovered by the reporter who sent the message on which it is based on the day of its publication. On November 4, 1907, this action was commenced. On January 21, 1908, the defendant published an article disclaiming any intention of reflecting on the plaintiff or his brother. The language of the message received by the defendant indicates upon its face a mistake or error in transmission. Speaking of John H. Sutphin and of his debtors, the words "her sons" instead of "his sons" are used, and being in the nature of a reflection upon his sons, to whom it is confined, the other language used is singularly inappropriate. In so far as the article purports to state information acquired through a personal interview with Mr. Frost, it is false and was known by the reporter to be false when he sent it. Nothing in the article published by the Brooklyn Eagle, which was the sole source of the information possessed by the reporter, justifies the statement that an estate of but $2,100 was left

the widow, or that Mr. Frost said that it was an outrage that such a small amount should be left to the widow. Mr. Frost made no statement on August 20th as stated in the article published by defendant. The day before he said to the reporter of the Eagle that the estate was sufficient for the comfortable support of his widow. The headlines were false and unwarranted by the article, as well as the statement that the plaintiff was indebted in any amount to his father at the time of his death. Although the reporter knew the same day the article was published that it was false, and that it and its headlines did not conform to the message he had sent the paper and had no truthful basis, no retraction or explanation was published until 5 months after the publication of the libel, and about 2½ months after the commencement of this action. There is no evidence on the part of the defendant that it did not know that the article published was unwarranted and false, and not in accordance with the information sent it by its reporter immediately following its publication or before the commencement of this action. These facts are sufficient to warrant the conclusion that the article was published wantonly, recklessly, and with an utter disregard as to whether it was true or false, and of the rights and feelings of the plaintiff. Turton v. New York Recorder, 144 N. Y. 144, 38 N. E. 1009.

The judgment and order must be affirmed, with costs. All concur.

---

### SUTPHIN v. NEW YORK TIMES CO.

(Supreme Court, Appellate Division, Second Department. May 6, 1910.)

Appeal from Trial Term, Queens County.
Action by Howard Sutphin against the New York Times Company. From a judgment for plaintiff and an order denying a motion for new trial, defendant appeals. Affirmed.
Argued before HIRSCHBERG, P. J., and JENKS, BURR, RICH, and CARR, JJ.

Alfred A. Cook (I. Maurice Wormser, on the brief), for appellant.
William Willett, Jr., for respondent.

