FLORENCE CAFFERTY, Respondent, *v.* SOUTHERN TIER PUBLISHING COMPANY, Appellant.

Libel — demurrer — defense that statements of alleged libel were true — when alleged libelous statements are clear and unambiguous their meaning cannot be extended by innuendo — when demurrer to such defense cannot be sustained.

1. The libel law is not a system of technicalities, but reasonable regulations whereby the public may be furnished news and information, but not false stories. When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel no legal harm has been done.

. 2. The office of an innuendo is to explain what has already been expressed, but not to enlarge or change the sense of the words used. When the publication complained of is libelous *per se* no innuendo is necessary, and, if the innuendo alleged is not borne out by the words, it may be treated as surplusage and a recovery had on the words themselves.

3. The defendant published in a newspaper under the headline " Public School Teachers' List Is Announced," the following matter concerning the plaintiff: " Miss Florence Cafferty, Supervisor of Music, charged with  *  *  *  incompetence by Superintendent Kelly is another of those not appointed." The defendant pleaded that the words were

true and stated somewhat in detail five things wherein the plaintiff had shown herself to be unqualified, unfitted, and without training and equipment to intelligently and efficiently perform her duties as *supervisor* of music in the public schools. *Held*, that plaintiff was charged with incompetence as *supervisor* of music and not as a *teacher* of music. As these words were clear and unambiguous their meaning cannot be extended as was attempted to be done by an innuendo, and the attempted justification met these charges fully and completely.

*Cafferty* v. *Kelly*, 180 App. Div. 45, reversed.

(Argued February 24, 1919; decided March 21, 1919.)

APPEAL from a final judgment entered June 13, 1918, after affirmance by the Appellate Division of the Supreme Court in the third judicial department of an interlocutory judgment of Special Term sustaining a demurrer to the third separate defense set up in the answer. The appeal is directly to this court from the final judgment of the trial court, the appellant bringing up for review only the order of the Appellate Division, entered upon a previous interlocutory judgment. The plaintiff demurred to the third separate defense set up in the answer. The Special Term sustained the demurrer, and the Appellate Division, third department, affirmed the order. No amendment to the answer having been made, a trial followed which resulted in a verdict for plaintiff. This court is now asked to review the determination of the Appellate Division in holding that the matter set forth in the third defense was not sufficient as a justification of the alleged libel.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Harvey D. Hinman* for appellant. Incompetency is not limited in its obvious and natural meaning to the meaning given it by plaintiff's innuendoes. (*People ex. rel. Rudd* v. *Cropsey*, 173 App. Div. 714; 219 N. Y. 641; *Nehrling* v. *State ex rel. Thol*, 112 Wis. 637; *People ex rel. Wood* v. *Dept. of Health*, 144 App. Div. 628; 202 N. Y.

610; *People ex rel. Hannan* v. *Bd. of Health,* 153 N. Y. 513; *Coppins* v. *N. Y. C. & H. R. R. R. Co.,* 122 N. Y. 557; *Maitland* v. *Gilbert Paper Co.,* 97 Wis. 476; *Hamann* v. *Milwaukee Bridge Co.,* 127 Wis. 550; *Metropolitan El. Ry. Co.* v. *Fortin,* 203 Ill. 454; *Tucker* v. *Telephone Co.,* 132 Mo. App. 418; *Young* v. *Milwaukee Gas Light Co.,* 133 Wis. 9; *Warren* v. *H. & H. Corp.,* 26 Del. 182.)

*T. B. Merchant* for respondent.   The defense demurred to is insufficient as a justification of the article complained of.   (*Larsen* v. *Brooklyn Daily Eagle,* 165 App. Div. 4; 214 N. Y. 713; *Morse* v. *Star Co.,* 118 App. Div. 256; *Turton* v. *N. Y. Recorder Co.,* 144 N. Y. 144; *Curtis* v. *Argus Co.,* 171 App. Div. 105; *Wachter* v. *Quenzer,* 29 N. Y. 547; *Stock* v. *Keele,* 86 App. Div. 136; *Zavier* v. *Oliver,* 80 App. Div. 292; *Young* v. *Fox,* 26 App. Div. 261; *Cafferty* v. *Kelly,* 180 App. Div. 45; *Bingham* v. *Gaynor,* 203 N. Y. 27; *Kober* v. *Lyle,* 173 App. Div. 655.)

CRANE, J.   The complaint alleges that the plaintiff is an educated and trained teacher of music and for upwards of thirteen years prior to the 6th day of June, 1916, had been earning her livelihood in the profession of teaching in the public schools in the city of Binghamton, and four and one-half years prior to and including 1916 was engaged as supervisor of music in all the fifteen schools of said city, including the high school.

On the 6th day of June, 1916, the defendant published in the Binghamton *Republican-Herald* under the headline " Public School Teachers' List Is Announced " the following matter concerning the plaintiff:

" Miss Florence Cafferty, Supervisor of Music, charged with  *  *  *  incompetence by Superintendent Kelly is another of those not appointed."

The innuendo pleaded states that this charged the plaintiff with being " unqualified and unfitted to practice her said profession, that she lacked the ability, special

education, training and equipment necessary to enable her to perform the duties of a teacher with intelligence and efficiency, that by reason of such lack of ability, special education, training and equipment as a teacher of music, plaintiff was unqualified and unfitted to retain the position as teacher in the public schools of Binghamton, and for that reason was not reappointed to that position by the Board of Education in said city at its meeting on June 5th, 1916."

The defendant, after pleading denials and that the article published was privileged as a fair account of the public proceedings of the board of education of the city of Binghamton set up a justification in its third defense which reads as follows:

" For a third and as a separate and further answer and defense said defendant alleges upon information and belief that the words set forth in the complaint and therein alleged to have been published by the defendant were and are true; that the plaintiff is a woman with a vexatious and perverse temper and in her employment as supervisor of music in the schools of the City of Binghamton spitefully and abusively illtreated teachers who were required to work under her direction as well as other teachers who were associated with her in the work of teaching in the schools of said city; that in her said employment she wilfully antagonized the principal of the high school under whose direction she was required to work while in said high school and wilfully inconvenienced said principal and other teachers in said high school and wilfully and systematically caused and attempted to cause dissensions among the teaching force of the schools of said City of Binghamton; that the plaintiff's said acts tended to injure the schools of said city and did injure them and that by reason thereof as well as by reason of her perverse temperament she was and is incompetent to continue in her said employment and because of such incompetence was not reappointed at the expiration of

her contract with the Board of Education of said City of Binghamton at the close of the school year for 1915–1916."

It has been held thus far that this defense is not a justification and, therefore, insufficient as the matter pleaded is not as broad and extensive as the libel. (*King* v. *Root*, 4 Wend. 113; *Collis* v. *Press Publishing Co.*, 68 App. Div. 38; *Saunders* v. *Post Standard Co.*, 107 App. Div. 84.) It is said that the incompetency charged applies and is restricted to the plaintiff's learning, knowledge and ability as a teacher of music, whereas the attempted justification only touches upon her temperamental disqualifications.

We think that the article has been misconstrued and the justification unduly limited.

Miss Cafferty was charged with incompetency as *supervisor* of music and not as a *teacher* of music. As these words were clear and unambiguous their meaning cannot be extended by an innuendo. The office of an innuendo is to explain what has already been expressed, but not to enlarge or change the sense of the words used. (*Bearce* v. *Bass*, 88 Maine, 521; *Goodrich* v. *Hooper*, 97 Mass. 1, 5; *Fleischmann* v. *Bennett*, 87 N. Y. 231; *McDonald* v. *Press Publishing Co.*, 174 App. Div. 463.) It is well settled that when the publication complained of is libelous *per se* no innuendo is necessary and, if the innuendo alleged is not borne out by the words, it may be treated as surplusage and a recovery had on the words themselves. (*Gustin* v. *Evening Press Co.*, 172 Mich. 311, 315; *Arnold* v. *Ingram*, 151 Wis. 438, 452.)

Construed by this rule the complaint alleges that the plaintiff was charged with incompetency as supervisor of music and that the charge meant and was intended to mean (a) that the plaintiff was unqualified and unfitted for supervisor; (b) that she lacked the ability, special education, training and equipment necessary to enable her to perform the duties of a supervisor of music with intelligence and efficiency; (c) that the plaintiff was

unfitted to retain the position as supervisor of music in the public schools of Binghamton.

The attempted justification met these charges fully and completely.   It stated five things wherein the plaintiff had shown herself to be unqualified, unfitted, without training and equipment to intelligently and efficiently perform her duties as *supervisor* of music in the public schools.

These things were (a) that she had a vexatious and perverse temper; (b) that she spitefully and abusively illtreated teachers who were required to work under her direction; (c) that she wilfully antagonized the principal of the high school whom she was to obey; (d) that she wilfully inconvenienced the principal and other teachers; (e) and systematically caused dissensions among the teaching force.

A supervisor is one having authority over others and to supervise is to superintend and direct.   Incompetence, as applicable here, is a general lack of capacity or fitness for directing, controlling and supervising the teaching of music.   This is an entirely different matter from incompetence as a teacher or the lack of requisite knowledge, equipment and ability to teach.   A peculiar adaptability is frequently necessary to make one fitted for the control and direction of subordinates, and a person perfectly able to do the work himself may be wholly incapable of acting as a superintendent over others.   Every business and profession is familiar with this distinction.

But even if the article means that the plaintiff was incompetent to teach music to children in the public schools we would still be of the opinion that the justification was sufficient.   A teacher who had a vexatious and perverse temper, illtreated her associates, antagonized the rules and wilfully inconvenienced superiors could hardly be fitted for her place.   Education in part at least consists in knowing how to behave.   However this may be, the plaintiff was a supervisor of music and not merely a teacher.   So reads the charge.

If the defendant were able to prove the statements alleged the plaintiff certainly was incompetent as a supervisor or director of music, and the published article was, therefore, true.

Words are to be construed as persons generally understand them and according to their ordinary meaning. (*Larsen* v. *Brooklyn Daily Eagle*, 165 App. Div. 4; 214 N. Y. 713.) Incompetence, therefore, cannot be limited merely to a lack of mental equipment and knowledge of music or ability to teach. It must have an association with the work and position which the plaintiff was filling — a lack of fitness for the duties of the office. (*Nehrling* v. *State*, 112 Wis. 637, 647; *People ex rel. Hannan* v. *Board of Health, City of Troy*, 153 N. Y. 513, 520.) Teachers and pr ncipals in our public schools and professors in our colleges require something more than learning to make them efficient. Character, manners and self-control are a part of the qualifications which fit one to be a guide to the young to whom example is as potent as precept.

The libel law is not a system of technicalities, but reasonable regulations whereby the public may be furnished news and information, but not false stories about any one. When the truth is so near to the facts as published that fine and shaded d stinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done. Competency, therefore, as applicab e to the plaintiff's position would be accepted by the ordinary person as a synonym for fitness and ability to do the work required in the public schools as a supervisor of music and would not be understood or taken to refer to the plaintiff's learning or culture as a musician. True, some might take her discharge to mean all this, but the law cannot take words from their setting and association; rather it must receive them for what they fairly and reasonably state.

Whoever may read this opinion, of course, must understand that we are dealing solely with a question of

law and the sufficiency of the words which the parties have put on paper to make out a defense if proved. The statements must not be accepted as any intimation of the facts for we are dealing solely with a question of pleading.

The interlocutory judgment sustaining the demurrer should be reversed, and the demurrer overruled.

The judgment appealed from should be reversed, with costs.

HISCOCK, Ch. J., COLLIN, CUDDEBACK and HOGAN, JJ., concur; CHASE and MCLAUGHLIN, JJ., dissent.

Judgment reversed, etc.